IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

**NORRIS WILLIAMS and TASHARIA** *
**WILLIAMS o/b/o their minor son "N.W."** *
                                        *   **3:24-cv-60**
                                        *
**VS**                                   *
                                        *
**LOUISIANA HIGH SCHOOL** *
**ATHLETIC ASSOCIATION, INC.**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## COMPLAINT FOR INJUNCTIVE RELIEF

NOW INTO COURT, through undersigned counsels come the Petitioners, Norris Williams and Tasharia Williams, on behalf of his minor son, "N.W." respectfully represent to this Court the following:

1.

The Petitioners bring this action to challenge the "Residence and Transfer" and "Undue Influence" Rules of the Defendant, the Louisiana High School Athletic Association ("LHSAA"). The Resident and Transfer Rule rule imposes a one-year ineligibility sanction against a student if that student attends school outside of his/her "Home Attendance Zone."

2.

These rules unjustifiably restrain the ability of these high school athletes to engage in the market for their talent as Louisiana high school athletes. This action seeks declaratory and injunctive relief against the Defendant for a violation of Section 1 of the Sherman Act, 15 U.S.C. 1.

## INTRODUCTION

3.

In the 104 years of LHSAA's existence, the scope and subject matter of its rules governing high school athletics have expanded significantly. It has not only adopted the rules to ensure the actual contests on the field, courts, tracks, etc. are fair and safe, but it has also created rules that control "off the field" competition among its members and high school athletes. Some of these rules are unreasonably restrict competition between competitors, with no overriding procompetitive benefit, run afoul into our country's antitrust laws which are premised on the belief that market forces provide the best outcome.

4.

One such rule is the LHSAA's "Resident and Transfer Rule," which restricts the eligibility of high school students who transfer outside his/her "Home Attendance Zone." The connection to this rule and academic well being or athletic amateurism is shaky at best and is outweighed by the harm it does to the high school athlete.

5.

The "Resident and Transfer" is a "no-poach agreement" between horizontal competitor member schools that serves to allocate the market for the labor of LHSAA high school athletes. This agreement violates the Sherman Act. In contrast to high school athletics, students who transfer to different high schools aren't restricted in participating in other school activities such as band, debate, clubs, student council, etc.

6.

For high school athletes, the one-year sanction is devastating, in particular if that athlete is a senior in high school. Unlike, collegiate athletes who can apply for additional years of eligibility under certain circumstances, once a high school athlete graduate high school his/her athletic career is over.

7.

The "Resident and Transfer" Rule deters players and teams from achieving optimal matches by forcing high school athletes to weigh the one-year ineligibility period against the benefits of moving to a better matched school. This strips the high school athlete of the agency and opportunity to optimize their own welfare as they see fit.

8.

Further, the application of the rule itself is both arbitrary and capricious.

9.

The LHSAA is an association of member schools that compete against each other to attract athletes, fans, and revenues, it has enacted and enforced anticompetitive rules and policies that act as an unlawful barrier on the ability of certain high school athletes and schools to compete against each other.

10.

The Petitioners bring this action to put a stop to the Defendant's unjustified overreach into the lives and potential careers of high school athletes, to prevent the unjustified anticompetitive restriction on member schools who seek to compete for high school athletes, and to restore freedom of economic opportunity.

**JURISDICTION AND VENUE**

11.

This court has jurisdiction over this action under Section 1 of the Sherman Act, 15 U.S.C. 1, Sections 4 and 26 of the Clayton Act, 15. U.S.C. 26, and under 28 U.S.C. 1331 and 1337.

12.

Venue is proper in this district under Section 12 of the Clayton Act, 15 U.S.C. 22, and under 28 U.S.C. 1391(b)(2).

13.

The Plaintiffs are granted authority to bring actions for injunctive relief under federal antitrust law pursuant to 15 U.S.C. 26.

## THE PARTIES

14.

Norris Williams and Tasharia Williams bring this action on behalf of their minor son "N.W.", who is a high school student at Archbishop Hannan High School, a member school of the LHSAA. "N.W." was ruled ineligible to play basketball for the 2023-2024 season due the "Resident and Transfer" Rule.

15.

The Defendant, LHSAA is a non-profit corporation that acts as the governing body of high school sports in the State of Louisiana. The LHSAA has 451 member schools throughout the state of Louisiana. Through the LHSAA Constitution and Bylaws, the LHSAA and its members have adopted regulations governing all aspects of high school sports, including the rules challenged in this petition. The rules set forth in the LHSAA Constitution and Bylaws constitute horizontal agreements between the LHSAA and its member schools and among LHSAA member institutions.

## RELEVANT MARKETS

16.

First, there are some athletic competitions by LHSAA member schools that take place outside of the state of Louisiana against schools from other states.

17.

Additionally, the LHSAA has corporate sponsorships from companies outside of the state of Louisiana and some of its member schools benefit from federal funding.

18.

Moreover, high school student athletes have the ability to secure both athletic scholarships from colleges across the country and Name Image and Likeness (NIL) deals from companies across the country.

19.

LHSAA members represent 81% of the number high schools in Louisiana, thus there are no practical alternatives for high school students to participate in high school sports during the academic year.

20.

Participation in high school athletic events on game day has significant benefits to the student athlete. They have the opportunity to showcase their talents in front of large audiences, gain exposure to colleges for potential scholarships, and NIL agreements which can benefit them financially.

21.

Within these relevant markets, the LHSAA maintains exclusive power, dictating the rules and regulations for the participation in high school athletics through its member schools.

22.

Though LHSAA is a non-profit organization, the transactions that member schools make with the student athletes yield significant revenue and notoriety for the member schools and have significant effects on the future earning potential for those student athletes. LHSAA events are

marketed to consumers who view both in-person and via broadcasts. LHSAA and its member schools have both local and national corporate sponsorships. The relationship between the sponsorships and LHSAA (and its members) are based in large part to the visibility these sponsors get at the sporting events. Thus, these transactions between LHSAA, its member institutions, corporate sponsors, and the high school athletes are inherently commercial in nature and fall under the purview of the Sherman Act.

## **ANTICOMPETITIVE EFFECTS**

23.

The "Resident and Transfer" Rule restrains high school students from freely moving among member schools to improve their personal growth, well-being, and economic opportunities.

24.

This eligibility restrictions violates the Sherman Act, because it has direct anticompetitive effects that harm high school athletes and consumers of high school sports.

25.

The "Resident and Transfer" Rule operate as a no-poach, market allocation agreement among the LHSAA and its member schools for the labor of high school athletes. These rules hurt the student athlete in three (3) areas of the relevant markets: a) when student athletes are making the decision on whether to transfer; b) when student athletes decide to transfer and are searching for a new school to attend; c) when student athletes are denied eligibility to compete for one year after transferring to a new school.

26.

These rules hurt student athletes by discouraging them from transferring to a different school that may benefit their academic, mental, and athletic well-being. This threat of ineligibility looming over transfer decisions may cause a student athlete from transferring to a different school, though that school may offer better opportunities for that student.

27.

Forced ineligibility and missing a single game can negatively impact a student athlete's future earning potential. One play in one game could take a student athlete from being relatively unknown to a national sensation. This could determine whether or not a student athlete gets an athletic scholarship or how he/she is valued for NIL deals.

28.

On3 is the industry leading index that sets high school and college athletes projected annual vale (PAV) by combining Roster Value and NIL. Their proprietary algorithm calculates an athletes value by using dynamic data points targeting four (4) primary categories: a) performance; b) influence; c) exposure; d) deal data.

29.

A student athlete's marketability is based in large part to that athlete's availability. The LHSAA rules impedes on a student athlete to take advantage of current and future opportunities derived from NIL.

30.

NIL agreements may vary depending on the school at which the student athlete competes (or going to compete at in college), NIL resources the school may provide, the degree of the exposure that the student athlete might expect from playing sports at that school, relationships a given school may have with third parties interested in NIL agreements, etc. By limiting

eligibility of student athletes based on transfer rules prevents student athletes from maximizing NIL valuations (which can run into the millions of dollars), thus having immeasurable and lasting economic effects.

31.

The creation of the NIL for high school athletes makes the "Undue Influence" Rule a farce.

### "N.W.'s Case"

N.W. is currently a senior at Hannan. He transferred from St. Thomas Aquinas (STA) to Hannan after his junior year.

32.

N.W. was a student athlete at St. Thomas Aquinas (STA), standing out in both football and basketball. While at STA he was a varsity athlete participating in both football and basketball.

33.

During his junior year at STA, N.W. faced obstacles that were beyond his control.

34.

N.W. was threatened to be shot by a school member while attending a baseball game. First, due to a conflict between members of the STA baseball team and members of the STA basketball team, N.W. was threatened to be shot by a member of the baseball team in an act that appeared to be racially motivated.

35.

Secondly, his parents (Norris and Tasharia) made the difficult decision to separate. Due to Mr. Williams' work schedule it was decided that N.W. would primarily reside with Mrs. Williams.

36.

Mrs. Tasharia moved out of their community domicile and leased a residence located at 8382 Westshore Drive Covington, LA 70435.

37.

Due to the decision of N.W.'s parents to separate and for N.W. to reside with his mother, N.W. transferred from STA (located in Tangipahoa Parish) to Hannan (located in St. Tammany Parish). Mr. Williams and Mrs. Williams physically separated in August of 2022. The parties filed for a divorce on November 16, 2023 (after the 365 day physical separation requirement by law due the parties having minor children).

38.

N.W. was a standout athlete at (STA) and planned to continue his athletic journey at Hannan.

39.

Once enrolled at Hannan, N.W. signed up to play basketball.

40.

However, once the sports calendar turned to the basketball season, N.W. was ruled ineligible by the LHSAA.

41.

On November 29, 2023 Hannan appealed the decision to render N.W. ineligible and on November 30, 2023 the appeal was denied.

42.

By LHSAA rules, a hardship condition **only exists** if the condition that caused the student-athlete not to meet the basic eligibility requirements is **involuntary, unforeseen,**

**uncorrectable, and creates a unique situation** concerning the student-athlete's educational, emotional, or physical status that is **beyond the control** of the school, the school system, the student and/or his/her parents or guardian.

43.

Williams's avered that both the physical threat of violence against N.W. by other student-athletes at STA and his parents' separation and subsequent divorce both fall within the parameters of the LHSAA rules on transfers and eligibility exceptions.

44.

First, all students' physical and mental safety should be paramount at all places of education. Any threat of violence (in particular that of gun violence) should be taken seriously and effect that such a threat has compromised the mental health of such student should not be minimized.

45.

During the appeal process the Williams's and N.W. did not feel that STA did enough to protect and ensure the safety of N.W. if he were to continue attending STA.

46.

Moreover, N.W.'s parents divorcing is an involuntary, unforeseen, and uncorrectable circumstance beyond his control. His mother's decision to reside in another city/parish has nothing to do with him wishing to play basketball at Hannan, but for her own personal reasons as their family begins a new, yet difficult phase in their lives.

47.

N.W. should not be penalized by the LHSAA for the threats of violence levied against him with at STA by other STA student athletes, and certainly he should not be penalized for his parents divorcing.

48.

LHSAA's decision to render N.W. ineligible has already caused irreparable harm and damage as the high school basketball season has already started and N.W. cannot make up those games.

being inflicted to himself via the LHSAA through its erroneous ruling this season and causing Trey'Dez Green to miss the entire season which began in November of 2023.

## LACK OF PROCOMPETITIVE JUSTIFICATIONS

49.

The anticompetitive effects of the "Resident and Transfer" Rule in the relevant markets described above, the burden must shift to the Defendant under the rule of reason to provide procompetitive justifications for the rules in question.

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT

50.

The Petitioners repeat and reallege each allegation set for the in the proceeding paragraphs as fully set forth herein.

51.

The LHSAA, by and through its officers, directors, employees, agents or other representatives, and member schools have entered an illegal agreement to restrain and suppress competition in the relevant markets through the adoption of the "Transfer and Residence." Specifically, the LHSAA and its member schools have agreed to unlawfully restrain the ability of high school student athletes to transfer to other member schools without loss of athletic eligibility.

52.

The transactions between the LHSAA, its member institutions, its corporate sponsors, and the student athletes in these markets are commercial in nature and fall under the purview of the Sherman Act.

53.

This unlawful agreement among horizontal competitors has unreasonably restrained competition among schools for the high school athletes competing in relevant markets, as transferring student athletes potentially face a one-year ban or total ineligibility to compete at their new school.

54.

These athletes have been deprived of the benefits of free and open competition because of the aforementioned rules. Consumers of high school athletic competitions are also impacted by the ineligibility of these athletes. Any benefits to competition are outweighed by the harm to competition and to the high school athletes to the "Transfer and Residence" and Rule.

55.

The Defendant's conduct is ongoing as both student Petitioners have been unable to play basketball this season, unless injunctive relief is granted. This ongoing harm affects the current and future economic prosects for these student athletes.

56.

The Defendant and its member schools' anticompetitive acts were intentionally directed at the United States market and had a substantial and foreseeable effect on interstate commerce.

57.

The Petitioners will note that United States Federal Courts have ruled against the NCAA for similar restrictions on student athlete transfers (Ohio, et al vs. NCAA 1:23-cv00100).

## **PRAYER FOR RELIEF**

WHEREFORE, the Petitioners respectfully request that this Court:

Adjudge and decree that Defendant's, LHSAA enforcement of the "Transfer and Residence" and "Undue Influence" Rule violates the Sherman Act.

Enter an immediate preliminary injunction, in a form that the Court deems just and proper, pursuant to 15 U.S.C. 26, enjoining the Defendant, LHSAA from continuing to violate the Sherman Act by enforcing the "Transfer and Residence" and "Undue Influence" Rules to punish student athletes and member institutions for actions taken in compliance with any orders from this Court;

Enter a permanent injunction, in a form that the Court deems just and proper, pursuant to 15 U.S.C. 26, enjoining the Defendant, LHSAA from continuing to violate the Sherman Act by enforcing the "Transfer and Residence" and "Undue Influence" Rules to punish student athletes and member institutions for actions taken in compliance with any orders from this Court;

Enter an injunction against Defendant, Zachary High School, from preventing Petitioner, Green from participating in the basketball if the relief sought in this Petition is granted.

Award to each Plaintiff its costs, including reasonable attorneys' fees; and

Order any other relief that this Court deems just and proper.

RESPECTFULLY SUBMITTED:

/s/ Ronald S. Haley, Jr.

Ronald S. Haley, Jr. (#30900)
HALEY & ASSOCIATES
ATTORNEYS AT LAW, LLC
8211 Goodwood Blvd. Suite E
Baton Rouge, LA 70806
225 663 8869 office
888 900 9771 facsimile

/s/ George R. Tucker
George R. Tucker (#24235)
Tucker Law Firm
200A South Oak Street
Hammond, LA 70403
(985) 551-8825 (p)
(985) 318-0170 (f)
info@gtuckerlawfirm.com

CERTIFICATE OF SERVICE

    We hereby certify that the following pleading was served on the counsel for the Defendant, LHSAA and the principal of Zachary High School through electronic mail on this the 29th day of January, 2024.

/s/ Ronald S. Haley, Jr.
Ronald S. Haley, Jr.

/s/ George R. Tucker
George R. Tucker